J-S04002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF: L.S.K., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.A., MOTHER | No. 2938 EDA 2016 |

Appeal from the Order Entered August 11, 2016
In the Court of Common Pleas of Monroe County
Orphans' Court at No(s): No. 2 O.C.A. 2016

| | |
|---|---|
| IN RE: ADOPTION OF: W.H.K., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.A., MOTHER | No. 2940 EDA 2016 |

Appeal from the Order Entered August 11, 2016
In the Court of Common Pleas of Monroe County
Orphans' Court at No(s): No. 3 O.C.A. 2016

BEFORE:  SHOGAN and OTT, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED FEBRUARY 23, 2017**

S.A. ("Mother") appeals from two separate orders entered in the Court

of Common Pleas of Monroe County on August 11, 2016, denying her

---

[*]  Former Justice specially assigned to the Superior Court.

petitions to involuntarily terminate the parental rights of S.K. ("Father") to the minor children, L.S.K. and W.H.K. (collectively, "the Children") pursuant to 23 Pa.C.S. § 2511(a)(1). After careful review, we affirm.

The trial court summarized the relevant facts of this case as follows:

1. L.S.K.[, a son born in February of 2006].

2. W.H.K.[, a son born in August of 2008].

3. [Mother] resides in Monroe County, Pennsylvania with her spouse [(hereinafter "Stepmother")], and the two minor children.

4. [Father] resides [in] Berks County, Pennsylvania[.]

5. Mother and Father were married in 2004 and divorced in 2010.

6. Mother and [Stepmother] were married [in] 2014.

7. [Stepmother] wishes to adopt the minor children and has filed a Petition for Adoption.

8. [Stepmother] has known the children since 2008 when she began dating Mother.

9. Mother, [Stepmother] and the [C]hildren moved to Monroe County two (2) years ago.

10. Prior to moving to Monroe County, they lived in western Pennsylvania, and prior to that, closer to Father in Berks County.

11. Following the initial separation of Mother and Father in 2008, the custody arrangements were that the [C]hildren lived with Mother subject to Father's periods of partial physical custody on the weekends as the parties could agree.

12. Father visited less when Mother, [Stepmother,] and the [C]hildren moved to western Pennsylvania, and even less when they moved to Monroe County, Pennsylvania.

13. In 2014, Father had two (2) visits with the [C]hildren[, one each] in July and December.

14. In 2015, Father had three (3) visits with the [C]hildren [one each in] April, May and August.

15. Father has not seen the [C]hildren since the August 2015 visit.

16. Father has not called the [C]hildren in 2016.

17. Father did not send a birthday card or gift to L.S.K. in 2016, nor a card or gift to either child for Christmas in 2015.

18. Father and his mother both stated they have gifts and cards for the [C]hildren for the 2015 Christmas and birthdays at their house in Berks County.

19. Mother and Father worked out visits and transportation in 2010 – 2013 because of Mother's distance from Father when living in western Pennsylvania (Venango County).

20. Father has not attended school events or met the teachers of the [C]hildren.

21. Father has not filed for custody.

22. Father has paid child support, although it was sporadic at times; but, Mother received a child support payment just prior to the hearing in this matter.

23. The [C]hildren do well in school and enjoy living with Mother and Stepmother.

24. Stepmother and the [C]hildren have a close bond and do activities together as a family.

25. The [C]hildren want to change their names to [Stepmother's name as Mother did].

26. Mother has not refused visits [to Father].

27. Father lives with his parents and sometimes with his girlfriend.

28. Father is employed as a plumber and is now regularly paying support.

29. Father had a drug addiction, for which he underwent treatment starting in July 2015.

30. Father takes medication, sees a counselor and is now living sober while in a suboxone treatment program.

31. L.S.K. does not want contact with Father and cited his reason as the limited visits of Father in the past which frustrated him.

32. W.H.K. presented as less inclined to have no contact with Father and was less certain about the prior events and the meaning of this proceeding.

Trial Court Opinion, 8/11/16, at 1-4.

On January 14, 2016, Mother filed petitions to involuntarily terminate Father's parental rights to the Children. On June 27, 2016, the trial court held a hearing on both termination petitions. In the orders dated August 11, 2016, the trial court denied Mother's termination petitions. This timely appeal followed, and both Mother and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Mother raises three issues for this Court's consideration:

1. Did the trial court err and/or abuse its discretion in failing to terminate the parental rights of [Father] where he had no contact of any kind with [the Children] for a period of 10 months and sporadic contact prior to that with no involvement in [the Children's] lives, he delayed the termination of parental rights (TPR) hearing for 90 days for the stated purpose of conducting discovery which he never performed, he took no action to contact the Children by any manner during the 90 day continuance, and the Children expressed a lack of interest in contact with Father and evidenced a genuine love for and bond with [Stepmother?]

2. Did the trial court err and/or abuse its discretion in failing to acknowledge or consider the opinion of the [court-appointed] guardian ad litem (GAL) where the GAL was fully supportive of the [petition to involuntarily terminate Father's parental rights] after interviewing the Children, [Mother], and Stepmother[?]

3. Did the trial court err/and or abuse its discretion where it applied an erroneous standard that Father did "just enough" to prevent the [petition to involuntarily terminate Father's parental rights] where Father did not make diligent efforts nor did he exercise reasonable firmness to maintain a place in the Children's lives[?]

Mother's Brief at 15 (full capitalization and bold typeface omitted). Because all of Mother's issues concern the allegation that the trial court abused its discretion in denying Mother's petitions, we shall address the issues concurrently.

Our standard of review is well settled:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

As we discussed in [*In re:*] *R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)], there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and

often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (internal citations omitted). Additionally, the burden is upon the petitioner to prove by clear and convincing evidence the existence of grounds for termination of parental rights. *Id*. at 821.

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation and internal quotation marks omitted)).

The trial court's order addressed section 23 Pa.C.S. § 2511(a)(1) and (b), which are set forth below:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

- 6 -

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

This Court has found in regard to review of the statutory requirements

as follows:

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

*In re Adoption of Charles E.D.M.*, 550 Pa. 595, 708 A.2d 88, 91 (1998).

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her

- 7 -

conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*Id*. at 92 (citation omitted).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008).

Regarding the definition of "parental duties," this Court has stated:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

***In re B., N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations and quotation marks omitted).

In denying Mother's petitions to terminate Father's parental rights pursuant to Section 2511(a)(1), the trial court reviewed the record and the evidence presented and concluded that it is clear that Father had contact with the Children in August 2015, which was within six months of the filing of Mother's petitions. Trial Court Opinion, 8/11/16, at 5. The trial court continued, "Although a hearing was not held in this matter until June 27, 2016, due to a continuance and the [trial c]ourt's own availability, the statutory section cited by [Mother] requires a settled purpose to relinquish parental rights within the six (6) months prior to the filing of the petition." ***Id***.

Father testified that before Mother, Stepmother, and the Children moved to Monroe County, Mother provided dates of the Children's extracurricular activities and dates the Children could visit Father, which allowed Father to plan his schedule; after the move, Mother stopped providing that information to Father. N.T., 6/27/16, at 47-48. Father further testified that his attempts to contact Children were unavailing, that he tried to contact the Children by calling Mother's house telephone number, and he left a message when no one answered. ***Id***. at 44-45.

The trial court concluded that "Father has done just enough for [Mother] to be unable to prove termination under Pa. C.S.A. §2511(a)(1)."

Trial Court Opinion, 8/11/16, at 6. While noting that it is likely that Mother ignored Father's telephone calls in 2015, the trial court did not fault Mother. "[Mother] did what she thought was best for the [C]hildren based upon what they wanted, as well as the sporadic and limited contact by Father for the past two (2) years; and his admitted drug abuse issues." *Id.* at 7. The trial court acknowledged that:

> Although children cannot wait forever for parents to step-up and provide adequate parental duties and interaction, evidence of a drug addiction and treatment to stay sober can be considered by the [trial c]ourt when determining if there has been a settled purpose to relinquish rights. One cannot put on hold the duty to perform parental rights, but decisive actions to be clean and sober in order to be a parent again is relevant.

*Id*.

> Further, the trial court stated
>
> We cannot say, based upon the facts herein, that Father's rights should be terminated at this time under 23 Pa.C.S.A. §2511(a)(1). Although there is a step-parent willing to adopt, who has a close bond with the [C]hildren, who has lived with them for most of their lives, and where the feelings of the [C]hildren is that they want to be adopted, the issue under 2511(a)(1) is what Father has done to maintain parental rights. Here, he has done the minimum to maintain a second chance to be a [f]ather to the minor [C]hildren. Father has attempted to maintain contact and see the [C]hildren despite a drug abuse problem. Father is now clean and sober and ready to be more of a presence in the [C]hildren's lives.

*Id*. at 8.

The trial court determined Father testified credibly that he attempted to see the Children. We defer to the trial court's determination of credibility, absent an abuse of discretion, and discern no such abuse in its finding

Father's testimony to be credible. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). Moreover, the record supports the trial court's determination that while Father's efforts have been minimal, at the present time Father has not engaged in a course of conduct demonstrating a settled purpose of relinquishing his parental rights nor has he refused or failed to perform parental duties pursuant to 23 Pa.C.S. § 2511(a)(1). Accordingly, we discern no abuse of discretion or error of law in the trial court's conclusion.[1]

Because we conclude that the trial court did not abuse its discretion in its determination under 23 Pa.C.S. § 2511(a)(1), we need not engage in a section 23 Pa.C.S. § 2511(b) analysis. *See In re P.Z.*, 113 A.3d 840, 850 (Pa. Super. 2015) (stating that only where the court determines that the parent's conduct warrants termination of his parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b)).

_____

[1] We note that Mother avers that the trial court erred in failing to consider and in ignoring the GAL's recommendation that terminating Father's parental rights was in the Children's best interests. Mother's Brief at 25. However, Mother provides no legal authority that requires the trial court to follow the opinion of a guardian *ad litem*. Rather, a GAL's opinion is advisory only. *In re Adoption of R.J.S.*, 889 A.2d 92, 100 n.8 (Pa. Super. 2005). Moreover, immediately following the GAL's statement in favor of terminating Father's parental rights, N.T., 6/27/16, at 111-112, the trial court said: "Thank you, everybody. I am going to take the matter under advisement. I will give it some thought and I'll issue an opinion and order sometime in the future." *Id*. at 112. Thus, the allegation that the trial court ignored the GAL's position is not supported by the record. After review, we are satisfied that the trial court properly considered and weighed the evidence and committed no abuse of discretion in reaching its decision.

Thus, for the reasons set forth above, we affirm the orders denying Mother's petitions for termination of Father's parental rights.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/23/2017